**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:    LEO RAZZI, | : | Chapter 13 |
| | : | |
| Debtor | : | Bky. No. 14-14089 ELF |

# M E M O R A N D U M

## I. INTRODUCTION

Leo Razzi ("the Debtor") commenced this chapter 13 bankruptcy case on May 21, 2014.[1] (Doc. #1).  In his bankruptcy schedules, he disclosed ownership of two (2) properties in the City of Philadelphia: 1015 New Market Street ("the New Market Property") and 1018-30 Germantown Avenue ("the Germantown Avenue Property") (collectively, "the Properties"), with current values of $150,000.00 and $500,000.00, respectively.  (Sch. A, Doc. # 1).  In Schedule D, the Debtor listed only one (1) secured creditor, the City of Philadelphia, holding a claim of $25,000.00 for unpaid real estate taxes on the Germantown Avenue Property.  (Doc. # 11).

On June 12, 2014, Gulam and Nirpal Gogolu (collectively, "Gogolu") filed a proof of claim ("the POC") in the amount $148,795.63 ("the Claim").  In the POC, Gogolu stated that both Properties secure the Claim based upon a default judgment entered against the Debtor on or about October 21, 2013 ("the C.P. Judgment") in an action filed in the Court of Common Pleas, Philadelphia County, docketed at No. 3142, October Term 2012 ("the C.P. Action").  Gogolu also attached to the POC:

---

[1] Initially, John M. Franklin ("Franklin"), Kashkashian & Associates represented the Debtor.  On September 16, 2014, Geri H. Gallagher entered her appearance on the Debtor's behalf; Franklin withdrew his appearance on September 26, 2015.  (Doc. #'s 37, 43).

- a Promissory Note dated August 12, 2008 in the amount of $75,000.00 with interest at the rate of 25.0% per annum and identifying Razzi, Ltd. as the borrower; and

- a Guaranty of Payment identifying the Debtor as guarantor.

On December 27, 2014, the Debtor filed an Objection to the POC ("the Objection"). (Doc. # 69). After two (2) continuances of the hearing on the Objection, Gogolu filed a response ("the Response") on March 15, 2105. (Doc. # 84). In the Response, Gogolu raised as affirmative defenses to the Objection, inter alia, the Rooker-Feldman doctrine and res judicata.

The hearing on the Objection commenced on March 17, 2015. During the course of opening statements, it became apparent that Rooker-Feldman and res judicata defenses potentially were dispositive and would obviate the need for a lengthy evidentiary hearing. As a result, I suspended the hearing and requested written memoranda from the parties on those issues. The parties timely filed their respective memoranda on April 7, 2015 and April 27, 2015. (Doc. #'s 90, 91).

For the reasons explained below, I conclude that:

1. The Rooker-Feldman doctrine is not applicable and does not bar the Objection.

2. Gogolu's res judicata defense to the Objection is not ripe for determination. A hearing is necessary to determine if the Debtor can establish whether the "fraud exception" to the res judicata doctrine applies in this matter.

Based on these conclusions, I will bifurcate the hearing in the contested matter. I will schedule an initial hearing limited solely to the question whether the fraud exception applies. If the Debtor is successful at that hearing, I will schedule a second hearing to consider the merits of the Objection.

## II.  FACTUAL  BACKGROUND

In the Objection, the Debtor:

- alleged that the transaction on which the Claim is based was "arranged" by the Debtor's then-attorney, John M. Franklin ("Franklin");

- admitted that he executed "the [loan and guaranty] documents" in Franklin's office;

- alleged that the loan documents he signed also included an Open-End Mortgage and Security Agreement on the New Market Property;

- denied that he or Razzi, Ltd. ever received any funds in connection with the note and mortgage he signed in favor of Gogolu;

- admitted that he was served with the Complaint in the C.P. Action;

- alleged that he "turned over" the C.P. Action to Franklin and that Franklin entered his appearance in the case;[2]

- "question[ed]" the validity of the transaction due to the circumstances of another transaction which he considers suspicious.

(Objection, ¶¶4, 5, 7-11, 13-15, 18-26) (Doc. # 69).

The other transaction the Debtor considers "suspicious" involved the recordation of a $500,000.00 mortgage against the Germantown Avenue Property in favor of an entity called 1018-30 Germantown Avenue, Inc.. (Id. ¶19).  In the Objection, the Debtor alleged that:

- the same attorney (James Kennedy) who prepared the loan documents in the Golgolu transaction also prepared the loan documents that resulted in the mortgage against the Germantown Avenue Property;

- Kennedy was the incorporator of 1018-30 Germantown Avenue, Inc.;

---

[2]  Gogolu does not dispute this allegation.  In the Praecipe for Entry of Judgment, attached to the POC, Gogolu represented that Franklin entered his appearance in the C.P. Action before the entry of the default judgment.

- 1018-30 Germantown Avenue Inc.'s address is the same as Kennedy's law office;

- he knows nothing about the $500,000.00 mortgage and received no money or other consideration in connection with the mortgage;

- Kennedy is incarcerated based on federal, criminal charges.

(Id. ¶¶19-26).

In the Objection, the Debtor did not flesh out the precise nature of his "suspicions." I surmise that he contends that this court should infer that James Kennedy masterminded (or at least participated in) multiple fraudulent mortgage loan transactions, including the transaction giving rise to the Claim.[3] The Debtor did not articulate the legal ramifications if his "suspicions" are proven at trial or how exactly the facts state a defense to the POC.

In his post-hearing memorandum of law, the Debtor alleged additional facts and represented that he would prove them at trial. Specifically, he stated that between February 2004 and November 2009, his own attorney, Franklin, had represented Gogolu in several legal actions in the C.P. Court and in the landlord-tenant court division of the Philadelphia Municipal Court (against other parties, not the Debtor). (Debtor's Mem. at 3) (Doc. # 90). He acknowledged that "[t]he extent of the representation . . . is unknown." Id. The Debtor failed to articulate precisely how Franklin's prior representation of Golgolu lends support to the Objection. Presumably, he considers the representation another "suspicious" circumstance in the history of this matter and some evidence that the C.P. Judgment itself was procured by fraud.

---

[3] In the Response, Gogolu asserted that these factual allegations, relating to the mortgage transaction on the Germantown Avenue Property were irrelevant because Gogolu was not a party to that transaction. (Response, Doc. # 84, ¶33).

Based on these allegations, the Debtor requests disallowance of the Claim.

### III. **Rooker-Feldman** and **Res Judicata** Doctrines

This contested matter requires consideration of both the Rooker-Feldman and res judicata doctrines. Courts frequently describe these doctrines as "separate" but "closely related," e.g., Bates v. Harvey, 518 F.3d 1233, 1240 (11th Cir. 2008); Moore v. City of Asheville, 396 F.3d 385, 391 (4th Cir. 2005); In re Goetzman, 91 F.3d 1173, 1177 (8th Cir. 1996), and difficult to distinguish from each other, e.g., Noel v. Hall, 341 F.3d 1148, 1162-63 (9th Cir. 2003). The Seventh Circuit has observed that courts often confuse both doctrines, but for an "understandable [reason]: both sets of principles govern the deference that one court owes to an earlier judgment." Pesek v. Witscheber, 132 F.3d 36 (unpublished) (nonprecedential), 1997 WL 780824, at *3 (7th Cir. 1997).

As explained below, I conclude that Rooker-Feldman is not applicable. I defer my ruling on the applicability of res judicata.

#### A. **Rooker-Feldman**

#### 1.

The Rooker-Feldman doctrine has been discussed extensively in numerous reported opinions.[4] Therefore, I limit my discussion to the doctrine's key elements.

The Rooker-Feldman doctrine derives from two (2) Supreme Court cases, Rooker v.

---

[4] A rudimentary Westlaw search reveals that in the past three (3) years, in the Third Circuit alone, more than 370 reported decisions reference the doctrine.

Fidelity Trust Co., 263 U.S. 413, 415-16 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983). The doctrine is rooted in the statutory propositions that federal district courts are courts of original, not appellate, jurisdiction and that the United States Supreme Court is the only federal court possessing jurisdiction to review final judgments of a state's highest court. See 28 U.S.C. §1257(a); Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284-85 (2005). However, Rooker-Feldman is considered a "narrow" doctrine, limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection those judgments." Exxon Mobil, 544 U.S. at 284. When applicable, Rooker-Feldman divests a lower federal court of subject matter jurisdiction that might otherwise exist. See, e.g., In re Sabertooth, LLC, 443 B.R. 671, 679 (Bankr. E.D. Pa. 2011) aff'd sub nom. In re Green Goblin, Inc., 2014 WL 5800601 (E.D. Pa. Nov. 6, 2014).

In Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159 (3d Cir. 2010), the Court of Appeals adopted the following four-part test for determining whether a claim is subject to dismissal under the Rooker-Feldman doctrine:

> (1) the federal plaintiff lost in state court;
>
> (2) the federal plaintiff complains of injuries caused by the state-court judgments;
>
> (3) those judgments were rendered before the federal suit was filed; and,
>
> (4) the federal plaintiff is inviting the federal court to review and reject the state-court judgments.

Id. at 166.

Upon determining that Rooker-Feldman does not apply, and that subject matter

jurisdiction exists, a court may consider whether the related doctrines of claim preclusion or issue preclusion bar a plaintiff's claims. Id. at 170.[5]

### B. Res Judicata

The preclusive effect of a state-court decision in a subsequent federal proceeding is grounded in 28 U.S.C. §1738, which provides:

> Acts, records and judicial proceedings [of any court of a State, Territory, or Possession of the United States] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Under §1738, the bankruptcy court must look to Pennsylvania law to ascertain the preclusive effect, if any, of a judgment entered in a Pennsylvania state court.

Under Pennsylvania law, a prior judgment precludes a subsequent action when the two actions possess the following common elements:

   (1) identity of issues;

---

[5]   Turner v. Crawford Sq. Apts. III, L.P., 449 F.3d 542 (3d Cir. 2006) illustrates the principle that a determination that Rooker-Feldman does not apply may only provide a plaintiff with short reprieve. In Turner, prior to initiating a federal action, the federal plaintiff unsuccessfully defended a state-court eviction action based on non-payment of rent, partly on the ground that the landlord wrongfully refused payments tendered through a section 8 housing subsidy voucher. Id. at 543-45. Thereafter, the plaintiff filed a federal action alleging that the landlord violated the federal Fair Housing Act and discriminated against her based on her disabilities. Id. at 546.

The district court dismissed the action for lack of jurisdiction based on Rooker-Feldman. Turner, 449 F.3d at 546. The Court of Appeals reversed the Rooker-Feldman determination. Id. at 547 ("Turner's complaint raised federal claims, grounded on the FHA, not caused by the state-court judgment but instead attributable to defendants' alleged FHA violations that preceded the state-court judgment"). Nonetheless, the court affirmed the dismissal because the federal claims arose from the same facts, were simply a different legal theory for the claims and defenses she asserted in the state-court proceeding and there was no jurisdictional obstacle to raising them there. See id. at 548-51.

(2) identity in the cause of action;

(3) identity of persons and parties to the action; and

(4) identity of the capacity of the parties suing or being sued.

Eg., Daley v. A.W. Chesterton, Inc., 37 A.3d 1175, 1189-90 (Pa. 2012); Allegheny Inter., Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir. 1994) (applying Pennsylvania law).

When these requirements are met, a final judgment on the merits is conclusive of the parties' respective rights and bars a subsequent action involving the same claim, demand, or cause of action and issues. In other words, a final judgment precludes parties from relitigating claims that were part of the previous cause of action. See Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co., 902 A.2d 366, 376 (Pa. 2006); R/S Financial Corp. v. Kovalchick, 716 A.2d 1228, 1230 (Pa. 1998); see also In re Stevenson, 40 A.3d 1212, 1222 (Pa. 2012) (stating these principles and citing federal case law). Among the claims precluded are defenses that could have been, but were not, raised in the prior proceeding that concluded with the entry of an adverse judgment. See Robinson Coal Co. v. Goodall, 72 A.3d 685, 689-90 (Pa. Super. Ct. 2013); Stuart v. Decision One Mortg. Co., LLC, 975 A.2d 1151, 1152-53 (Pa. Super. Ct. 2009).

### C. Distinctions Between Rooker-Feldman and Res Judicata

One court described the conceptual distinctions between Rooker-Feldman and res judicata as follows:

> These doctrines are not the same. Although the two rules often overlap in their practical effects, they rest on contrasting foundations and serve distinct purposes. Thus, whereas res judicata is largely a matter of common law and involves the impropriety of permitting parties to have "two bites at the apple," Rooker–Feldman is based squarely on federal law and is concerned with

> federalism and the proper delineation of the power of the lower federal courts. Such courts are simply without authority to review most state court judgments — regardless of who might request them to do so.

Lemonds v. St. Louis Cnty., 222 F.3d 488, 495 (8th Cir. 2000). (citations omitted).

These conceptual differences have practical consequences. In In re Jones, 2003 WL 22843162, at *4 n.15 (Bankr. E.D. Pa. Nov. 14, 2003), the court noted several ways the Rooker-Feldman is "broader" than res judicata:

> (1) unlike res judicata, Rooker-Feldman is not dependent on a final judgment on the merits;
>
> (2) unlike res judicata, Rooker-Feldman contains no requirement that the precluded party had a full and fair opportunity to pursue its claim in the prior state-court proceeding; and
>
> (3) res judicata is an affirmative defense and can be waived, while Rooker-Feldman deprives the federal court of subject matter jurisdiction and cannot be waived.

The ways in which Rooker-Feldman is "broader" than res judicata may pale by comparison to the doctrine's limitations. Perhaps that is why, in its most recent pronouncements on the subject, the Supreme Court has emphasized the narrowness of the Rooker-Feldman doctrine. Lance v. Dennis, 546 U.S. 459, 464 (2006); Exxon Mobil, 544 U.S. at 284.

### D. Further Discussion of Great Western: the Second and Fourth Requirements

Great Western's four-part test highlights two (2) primary limitations restricting the application of Rooker-Feldman – specifically the second requirement (i.e., whether the injury complained of in the subsequent federal-court proceeding existed prior to the state-court proceeding and thus could not have been 'caused by' those proceedings) and the fourth

requirement (whether the plaintiff seeks the equivalent of appellate review of a state-court judgment). See Great Western, 615 F.3d at 166 (explaining that the test's second and fourth elements are "key" in determining whether Rooker-Feldman bars a federal suit).

**1.**

In Great Western, the Court of Appeals explained that the second requirement may be considered "an inquiry into the source of the plaintiff's injury." Id. Put another way: Was the injury caused by the other party's actions or by the entry of the state-court judgment? "When . . . a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, Rooker-Feldman is not a bar to federal jurisdiction." Id. at 167.

A "guidepost" in evaluating the second requirement is "whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." Id. The Second Circuit Court of Appeals explicated how the second requirement helps distinguish Rooker-Feldman from res judicata:

> [T]he applicability of the Rooker–Feldman doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court.

McKithen v. Brown, 481 F.3d 89, 97–98 (2d Cir. 2007). Thus, "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been

'caused by' those proceedings." Id. at 98 (2d Cir. 2007)); see also id. n.8.[6]

**2.**

Great Western instructs that the fourth requirement (i.e., that the plaintiff seeks de facto appellate review of the merits of the prior state-court judgment), while "closely related" to the second requirement, 615 F.3d at 168, also is designed to further narrow the Rooker-Feldman doctrine's scope. The Third Circuit emphasized that "a federal plaintiff who was injured by a state-court judgment is not invariably seeking review and rejection of that judgment." 615 F.3d at 168. Thus, a federal court may have jurisdiction to hear a claim that resembles an attack on

---

[6] Unquestionably, determining whether the federal plaintiff's injury pre-dated or was caused by the state-court proceeding is more "complicated when a federal plaintiff complains of an injury that is in some fashion related to a state-court proceeding." Great Western, 615 F.3d at 167. The court in Great Western considered the following example: a plaintiff's claim that another party procured the entry of a state-court judgment by fraud. Id. at 168. Depending on the circumstances, Rooker-Feldman may or may not bar such a claim raised in a federal court:

> Even though the injuries of which the plaintiff complained helped to cause the adverse state judgments, these claims . . . stemmed from some other source of injury, such as a third party's actions. On the other hand, [if the plaintiff asserts that] the state court's order . . . in and of itself is illegal and causes [the] Plaintiff harm [and] sought review of that order and [the claim is] not independent and [is] barred by Rooker–Feldman.

Id. (quotations and citations omitted).

The above discussion illustrates how the determination whether the asserted injury is caused by the state-court judgment or, instead, by conduct distinct from the judgment's entry and effects, often may be gleaned from the relief sought by the plaintiff. For example:

> [I]f the plaintiff seeks relief from the effects of a state-court judgment, such as an expungement of a criminal conviction, the federal action is barred. On the other hand, if the plaintiff seeks relief independent of the state-court judgment, such as a declaration that the statute on which the conviction was based is facially unconstitutional, the action is not barred.

18–133 Moore's Federal Practice Civil §133.30 (quoted in In re Stuart, 367 B.R. 541, 551 (Bankr. E.D. Pa. 2007)).

the merits of a state-court judgment. The court provided the example of a federal plaintiff, obliged by a prior state-court judgment to make certain payments to another party, who subsequently requests a federal declaratory judgment that the statute on which the judgment was based is unconstitutional. Id. Rooker-Feldman does not bar such a claim because it would not require the federal court to scrutinize or invalidate the merits of the state court's application of the statute in any individual case in the manner of an appellate court. Id. at 168-69 (discussing Adkins v. Rumsfeld, 464 F.3d 456, 460 (4th Cir. 2006)).[7]

## IV.  DISCUSSION

### A.  INTRODUCTION

The heart of the Objection to the allowance of the POC is the Debtor's contention that he does not owe the underlying debt. Rather, he claims the underlying loan note and guaranty are unenforceable – either due to: (1) a failure of consideration (i.e., the loan proceeds were never delivered to Razzi, Ltd. or to him personally) or (2) fraud that rendered the underlying loan unenforceable. (I will refer to the second ground of the Objection as the claimed "Transactional Fraud"). These defenses, if valid under state law, also are cognizable under applicable bankruptcy law in the claims objection and allowance process. See 11 U.S.C. §502(b)(1). In light of the existence of the C.P. Judgment, the threshold issue is whether the Debtor may raise

---

[7] Thus, a functional analysis of the nature of relief the federal plaintiff seeks aids the evaluation of the fourth Great Western requirement – as well as the second requirement, see n.6, supra. To the extent the plaintiff asserts a claim that seeks relief that would not directly nullify the force and effect of the state-court judgment, Rooker-Feldman concerns may not be implicated.

his defenses in this court – either because the Rooker-Feldman doctrine divests this court of jurisdiction or because the litigation of the defenses is precluded by res judicata.

As a general rule, a federal bankruptcy court bears an independent duty to satisfy itself first that it has subject matter jurisdiction over any pending matter before reaching the merits of a case. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); In re Mullarkey, 536 F.3d 215, 220–21 (3d Cir. 2008); Hubi v. Nalty, 2011 WL 2292808, at *1 (E.D. Pa. June 8, 2011); In re Olick, 2010 WL 4509828, at *1 n. 5 (Bankr. E.D. Pa. Nov. 9, 2010) (citing cases); see also In re Shuman, 277 B.R. 638, 654 n. 8 (Bankr. E.D. Pa. 2001).  A dismissal of a claim based on res judicata is considered a determination on the merits.  See, e.g., Hohenstein v. MGC Mortgage, Inc., 2012 WL 298123, at *6 (S.D. Ohio Feb. 1, 2013) (quoting Baker v. People's Choice Home Loan, Inc., 2010 WL 3447614, at *3 (S.D. Ohio Aug. 27, 2010)).  Therefore, I must first consider Gogolu's contention that Rooker-Feldman divests the bankruptcy court's core subject matter jurisdiction over the Objection, see 28 U.S.C. §157(b)(2)(B), before considering the res judicata defense.

Based on the principles outlined in Part III. A. and C. above, I conclude that Rooker-Feldman is inapplicable and that the bankruptcy court has jurisdiction to reach the merits of the Objection. I also conclude the merits of Gogolu's res judicata defense to the Objection are not ripe. Essentially, I cannot decide whether res judicata precludes the Debtor from relitigating his defenses until I determine whether an exception to the doctrine, known as the "fraud exception", applies.  That determination requires an evidentiary hearing that has not yet taken place.

**B. <u>Rooker-Feldman</u> Is Inapplicable**

The Debtor's challenge to the allowance of the POC based on a failure of consideration and the Transactional Fraud presents a scenario frequently encountered by bankruptcy courts: the filing of a proof of claim by a creditor who obtained a prepetition state-court judgment against a debtor, followed by an objection to the proof of claim by a debtor, who wishes to assert defenses to the claim's merits. Here, the Debtor claims he does not owe the money because the loan proceeds were not delivered and he was victimized by fraud. His allegations involve facts that preceded and are entirely independent of the entry of the state court judgment. His defenses arise from the parties' primary conduct, not the entry of the state-court judgment.

Based on the second requirement articulated in Great Western (i.e., the federal plaintiff complains of injuries caused by the state-court judgment), I conclude that Rooker-Feldman is not intended to address this garden variety situation in the proof of claim context. Rather, when a debtor objects to a proof of claim (supported by a pre-petition state court judgment), arguing that the claim should be disallowed based on facts that occurred prior to the entry of judgment and defenses that were, or could have been raised, in the state court litigation, such matters are governed by res judicata, not Rooker-Feldman. Therefore, the Debtor's "failure of consideration" and "transactional fraud" defenses/objections to the validity of the Claim are not subject to <u>Rooker-Feldman</u>.[8] See <u>Great Western</u>, 615 F.3d at 167 ("When . . . a federal plaintiff asserts

---

[8] There is an even broader argument for the proposition that <u>Rooker-Feldman</u> is inapplicable in this contested matter.

In <u>Exxon Mobil</u>, the Supreme Court emphasized that <u>Rooker-Feldman</u> "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings
(continued...)

injury caused by the defendant's actions and not by the state-court judgment, Rooker-Feldman is not a bar to federal jurisdiction"); accord Business Funding Group v. Dommer Constr. Corp, 2012 WL 1029464, at *2-*4 (W.D.N.Y. Mar. 26, 2012); see also Slavko Properties, Inc. v. T.D. Bank 2015 WL 1874233, at *5 (E.D. Pa. April 24, 2015) (rejecting the argument that the relief sought was barred by Rooker-Feldman simply because the plaintiff disputed facts necessary to the entry of the prior state court judgment).[9]

---

[8](...continued)
commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284.

      A debtor who files an objection to a proof of claim may not fit the description of a state-court loser bringing a "case" in federal court requesting review and rejection of the state-court judgment. Certainly, the bankruptcy debtor has initiated a federal proceeding – at least in the vast majority of the filings, which are voluntary bankruptcy cases. (And, a bankruptcy trustee who files a claims objection would not fit the description either). Further, while a debtor (or bankruptcy trustee) is, in some sense, the moving party in the contested matter that arises from a claims objection, a claim objection can also be conceptualized as a defensive response to the affirmative demand for payment made through the filing of the proof of claim. To the extent that the objector's request that a prior state-court judgment be disregarded is perceived as a defensive request for relief, Rooker-Feldman arguably is not implicated.

      I do not base my decision on this theory, but the theory is consistent with my conclusion.

[9]    But see Deitch v. Fannie Mae, 2-15 WL 3686528, at *5-6 (E.D. Pa. June 15, 2015). In Deitch, the court held that the pre-Great Western decisions, In re Madera, 586 F.3d 228 (3d Cir. 2009) and Laychock v. Wells Fargo Home Mortg., 399 Fed. App'x. 716 (3d Cir. 2010) continue to be good law. See Great Western, 615 F.3d at 170 n.4. In Deitch, the court concluded that it was bound by Madera, which held that a federal lawsuit to rescind a mortgage under the Truth in Lending Act, 15 U.S.C.§§1601 et seq., filed after the entry of a state court foreclosure judgment, is barred by Rooker-Feldman. The Madera court reasoned that granting rescission would nullify the state court judgment (which was dependent on the determination that a valid mortgage exists) and preclude the state court from enforcing the judgment.

      While I agree with the Deitch court's reading of the applicable Third Circuit precedents, in the end I think its analysis proves too much. I do not read footnote 4 of Great Western as creating a separate, independent "negating the state court judgment" Rooker-Feldman test. If Rooker-Feldman applies every time a litigant asks a federal court to make a determination that is inconsistent with a determination necessary to the entry of a state court judgment, then there would be no difference between
(continued...)

### C. The Res Judicata Defense Is Not Ripe for Decision

**1.**

Even if Rooker-Feldman does not deprive a federal court of jurisdiction, res judicata may preclude litigation of a matter. Here, it certainly appears at first blush and without any extended discussion that all of the elements necessary to apply res judicata and preclude litigation of the substantive defenses the Debtor wishes to raise in the Objection are present. See Part III.B., supra.[10] However, construing the Debtor's submissions and sparse factual allegations generously, I understand the Debtor also to suggest that the C.P. Judgment, itself, may have been procured by fraud arising from the prior relationship between his state-court attorney, Franklin, and Gogolu.[11] (I will refer to these particular allegations as the asserted "Judgment Fraud"). While the Debtor is not explicit on this point, I take him to contend that, due to the Judgment Fraud, the bankruptcy court should disregard the C.P. Judgment – i.e., not apply res judicata –

---

[9](...continued)
Rooker-Feldman and res judicata or collateral estoppel. Therefore, in applying Rooker-Feldman, I will limit myself to the four part test discussed extensively in Great Western.

[10] I am not deciding this question. Therefore, I will not set out a full res judicata analysis at this juncture.

[11] At one end of the spectrum, the Debtor may be suggesting that his state-court attorney conspired with Gogolu to procure the entry of the state-court judgment, a scenario certainly rising to the level of fraud. In the middle of the spectrum, the Debtor's attorney may have had a duty to disclose the prior relationship and, perhaps, breached that duty, but no conduct in this set of facts rises to the level of fraud. At the opposite end of the spectrum, the prior relationship between the Debtor's attorney and Gogolu may have been so remote or attenuated as to render the Debtor's concerns trivial. At this juncture, the Debtor himself appears unsure where on the spectrum the facts lie.

and allow him to litigate his substantive defenses to the merits of Gogolu's claim.[12]

Thus, through the claimed Judgment Fraud, the Debtor invokes what is known as the "fraud exception" to res judicata. "If a judgment has been procured by fraud or collusion, res judicata will not usually be an impediment to litigating a claim anew." Wilkes ex rel. Mason, 902 A.2d at 387 (citing Morris v. Jones, 329 U.S. 545, 550–51 (1947) and describing the principle as "generally accepted" in a case applying New York law). Case law suggests that Pennsylvania recognizes the fraud exception to res judicata. See Int'l Org. Masters, Mates and Pilots of Am., Local No. 2 v. Int'l Org' Masters, Mates and Pilots of Am., Inc., 318 A.2d 918, 921 (Pa. 1974); Gordon v. Hartford Sterling Co., 38 A.2d 229, 233 (Pa. 1944).[13]

---

[12] Again, I emphasize that I am interpreting the Debtor's submissions generously. Were his allegations made in the context of an adversary proceeding complaint, I doubt that the fraud claim would survive a motion to dismiss under Fed. R. Bankr. P. 7012. See Fed. R. Civ. P. 9(b) (incorporated by Fed. R. Bankr. P. 7009); Ashcroft v. Iqbal, 556 U.S. 662 (2009). However, those pleading requirements do not apply to a claims objection, which is a contested matter that mirrors civil litigation, but which is intended to be a "simpler, expedited proceeding[ ] without all the trappings of normal civil litigation." In re Shank, 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004).

[13] The Debtor's assertion that the C.P. Judgment may have been obtained through fraud, and that this court, therefore, can ignore its preclusive effect causes me to return, briefly, to Rooker-Feldman for one (1) additional observation.

The asserted Judgment Fraud is distinct from the initial, claimed Transactional Fraud. Earlier in this Memorandum, I pointed out that claims in the nature of Transactional Fraud, generally, are not subject to Rooker-Feldman because the actionable conduct occurred before the entry of the state court judgment and the plaintiff's injury was not caused by the judgment – i.e., the second requirement stated in Great Western for the application of Rooker-Feldman is absent. The same cannot be said of the Judgment Fraud. It is the entry of the judgment itself that caused the Debtor's asserted injury because it precludes him from litigating his defenses in this subsequent federal-court proceeding. As a result, the second Rooker-Feldman nexus requirement between the injury and the prior state court judgment seems to be satisfied with respect to asserted Judgment Fraud.

Nevertheless, I conclude that Rooker-Feldman is inapplicable with respect to the asserted Judgment Fraud because the fourth Rooker-Feldman requirement stated in Great Western (i.e., the

(continued...)

[13](...continued)
federal plaintiff is seeking appellate-like review and rejection of the state-court judgment) is not satisfied.

   I reach this conclusion on consideration of the relief requested by the Debtor. He seeks only the right to relitigate defenses that could have been (but were not) raised in the state-court case due to the default judgment. The Debtor is not asking the bankruptcy court to open, strike or declare that the state judgment is void or unenforceable. He asks only that this court not afford it preclusive effect, a request governed by 28 U.S.C. §1738. See generally Great Western, 615 F.3d at 173 (pointing out that in both Rooker and Feldman "the plaintiffs sought to have the state-court decisions undone or declared null and void by the federal courts").

   It is perhaps debatable whether declining to afford a prior judgment preclusive effect differs materially from nullifying or voiding a prior judgment, but I conclude that a difference exists and that the difference is material. In reaching this conclusion, I am influenced by the underlying purpose of Rooker-Feldman, which is based on our federal-state constitutional structure and the principle that federal trial courts should not exercise appellate jurisdiction over state-court judgments. Were the bankruptcy court to permit litigation of the merits of the defenses (after a finding that the state-court judgment was procured by fraud), the court would not be **reviewing** the state-court judgment for error; rather, it would be considering the issues **de novo**.

   Relitigation of the issues may run afoul of res judicata, but it is not appellate review. In Great Western, the court explicitly stated this principle:

> When the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment, the second, or federal, court is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.

615 F.3d at 169. (internal quotations and citations omitted). The Seventh Circuit agrees: "[w]hen a plaintiff seeks to relitigate a suit that has been decided against him, he is not so much attacking as trying to bypass the judgment in that suit; and the doctrine that blocks him is res judicata." Haas v. Wisconsin, 109 F. App'x 107, 111 n.5 (7th Cir. 2004) (nonprecedential).

   Indeed, if the fraud exception to res judicata applies here and I disregard the C.P. Judgment solely to permit litigation of issues the Debtor failed to raise in state court, this court would merely be acting in the same manner as any Pennsylvania trial court that must determine whether a prior judgment of a sister Pennsylvania court was procured by fraud. Particularly in claims litigation, in which objectors assert that a claim is unenforceable under applicable nonbankruptcy law, bankruptcy courts regularly endeavor to evaluate the substance of the litigation in the same manner as if the dispute were being heard in the trial court of the state whose substantive law governs. Viewed from this perspective, it is difficult to see how the bankruptcy court's consideration of the fraud exception to res judicata offends notions of federal-state comity or is otherwise inconsistent with the constitutional division of judicial power between federal and state courts. At least two (2) courts of appeal have recognized this principle,

(continued...)

At this stage of the contested matter, there is no evidentiary record and, without one, I cannot determine whether the fraud exception to res judicata applies and frees the Debtor to litigate his substantive defenses to Gogolu's claim.

Consequently, I cannot rule on Gogolu's threshold res judicata defense at this time.

## IV. CONCLUSION

For the reasons stated above, I conclude the Rooker-Feldman doctrine is inapplicable in this contested matter involving a debtor's objection to a proof of claim. I will schedule a hearing to consider whether the fraud exception to the doctrine of res judicata applies. If the fraud exception does not apply, I will make a final determination whether res judicata precludes litigation of the Objection. If the fraud exception applies, I will schedule a further hearing to consider the merits of the Objection.

An appropriate order follows.

Date: **July 22, 2015**

**ERIC L. FRANK
CHIEF U.S. BANKRUPTCY JUDGE**

---

[13](...continued)
holding that Rooker-Feldman does not "bar an action in federal court when that same action would be allowed in the state court of the rendering state." Davis v. Bayless, 70 F.3d 367, 376 (5th Cir. 1995); accord Fontana Empire Center, LLC v. City of Fontana, 307 F.3d 987, 993-94 (9th Cir. 2002).